**Edward N. JOHNSON, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 46, 1999.**

Supreme Court of Delaware.

Submitted: Nov. 21, 2000.
Decided: Dec. 22, 2000.

---

Thomas A. Foley, Wilmington, Delaware, for appellant.

John Williams, Department of Justice, Dover, Delaware, for appellee.

Before: VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices.

HOLLAND, J.

The defendant-appellant, Edward N. Johnson, was charged with: Trafficking Cocaine;[1] Possession With Intent to Deliver a Narcotic Schedule II Controlled Substance;[2] and Endangering the Welfare of a Child.[3] Following a jury trial, in the Superior Court, Johnson was convicted as charged. He was sentenced, *inter alia,* to be incarcerated for thirty years.

This is Johnson's direct appeal. The sole issue presented to this Court is an argument that it was plain error for the State to introduce "drug courier profile" evidence during its case-in-chief, through the testimony of a police officer, who was appearing as an expert witness. We have concluded that this matter must be remanded for a hearing on the issue of ineffective assistance of trial counsel.

### FACTS[4]

At approximately 9:00 p.m. on December 2, 1997, officers from the City of Dover Police Department were dispatched to an apartment in response to an "assault in progress" complaint made by an anonymous female 911 caller. Upon entering the premises, a second floor apartment, the officers discovered Johnson lying on the living room/kitchen floor. Johnson had been shot in the thigh. His legs were bound together with duct tape. It was later determined that the beating had also fractured Johnson's right femur. When the officers arrived at the apartment,

---

1. 16 *Del.C.* § 4753A(a)(2)(c).

2. 16 *Del.C.* § 4751(a).

3. 11 *Del.C.* § 1102(1)(a).

4. This recitation of facts is substantially as set forth by Johnson's attorney in this appeal.

Johnson told them that a person named Chris had shot him.

In the apartment, the police officers also discovered a small female child, later determined to be 18–months old, positioned on the floor next to Johnson. On the same floor, the police discovered a .25 caliber shell casing, a clean diaper, a roll of duct tape, and a box of sandwich type bags. Another box, containing several .25 caliber rounds, was found on the kitchen counter. The police found Cheryl Harris, the tenant, sitting in her bedroom. Harris's lethargic presence made the officers believe that she was under the influence of some drug.

The paramedics took both Johnson and the child to the Kent General Hospital. The police assumed the child was Johnson's daughter. Once at Kent General, a nurse cared for the child, while other medical staff in the emergency room attended to Johnson's wounds. Because the child's diaper felt heavy, the nurse proceeded to change the child's diaper in an adjacent room.

When the nurse opened the diaper, she discovered two bags containing a total of 136 grams of cocaine inside the diaper. There were also several paper towels which were placed between the cocaine and the child's crotch. Although the paper towels appeared soiled, the diaper was dry.

Without telling Johnson that cocaine had been discovered in the child's diaper, a detective questioned Johnson in the emergency room. Johnson told the detective that he was from New Jersey. According to Johnson, he and the child were going to Maryland in a rental car to visit a person named Charles Riley. Johnson said he did not know the name of the town in Maryland where Riley lived. While driving to Maryland, Johnson stated that he was paged by Chris, who asked Johnson to come to Dover apartment.

After arriving at the Dover address, Johnson approached the apartment. He was immediately accosted by two males, one of whom had a gun. The assailants forced Johnson upstairs into an apartment. One of the assailants took the child from him. Johnson was beaten and bound with duct tape, before being shot in the leg by Chris. Johnson told the police that Chris and he had "a beef" earlier in their relationship, but did not know why Chris and the others attacked him.

When the detective confronted Johnson about the cocaine found inside the diaper, Johnson denied any knowledge. He surmised that Chris must have planted it to set him up. The police suspected that "Chris" was Chris Burroughs, who was known to them as a drug dealer in Dover, and frequented the Dover apartment where they found Johnson. After presenting him with a photo line-up, Johnson identified Burroughs as the person who shot him.

Upon searching Johnson's clothing at the hospital, the police found keys for an Avis rental car. These keys listed the tag number for an automobile. Other Dover Police officers located the rental car parked approximately 150 feet from the Dover apartment where Johnson had been found. The police suspected that someone had rummaged through the car, which was unlocked when they found it.

After obtaining a search warrant, the Dover Police conducted a thorough search of the car. No contraband or drug paraphernalia was found in the car. The police did, however, seize: correspondence, addressed to Johnson at a Poughkeepsie, New York address; an Avis rental agreement, issued to a "Lincoln Grant" that same day at 3:35 p.m. in Mount Vernon, New York; and a backpack containing the same type of diapers worn by the infant child who was with Johnson.

Without any objection from Johnson's defense attorney at trial, the State called Detective William L. Kent to testify as an expert witness regarding the sale of illegal drugs. Detective Kent told the jury that Johnson fit the profile of a drug courier

because: Mount Vernon, New York, where the car was rented, is only 10–15 miles north of the Bronx; that New York City is a major "source city" for cocaine sold in Dover; and that illegal drug dealers often have couriers transport the contraband in rental cars. In its closing argument to the jury, the State theorized that the drugs must have belonged to Johnson, in part, because he is from New York City, the source city for cocaine, and because he had a rental car, a "red flag" indicator for a drug courier.

Johnson did not testify at trial. His defense attorney argued that no one saw Johnson place two plastic bags of crack cocaine in the 18–month–old child's diaper. The defense attorney also argued that any contraband found in the diaper was probably put there by Johnson's attackers, in order to get Johnson in trouble with the police.

The jury found Johnson guilty of Trafficking Cocaine, Possession with Intent to Deliver Cocaine, and Endangering the Welfare of a Child. Johnson's sentences included a minimum mandatory term of 30 years' imprisonment.

### Plain Error Review

■ In this appeal, Johnson argues that it was reversible error for the jury to hear Detective Kent's testimonial evidence that Johnson fit the profile of a drug courier. Johnson's trial attorney, however, made no contemporaneous objection to the drug courier profile evidence offered by Detective Kent at trial. Accordingly, Johnson's claim that the drug courier profile evidence was inadmissible may be reviewed in this direct appeal only for plain error.[5]

That review is limited to the record that is extant.

### Trial Counsel's Effectiveness

■ In a direct appeal, this Court does not usually consider claims that a defense attorney rendered ineffective representation at trial.[6] The proper procedure for presenting that claim initially is to file a motion in the Superior Court pursuant to Rule 61 of its Rules of Criminal Procedure. One of the reasons that this Court does not consider claims of ineffective assistance of trial counsel in a direct appeal is because the trial attorney is frequently best able to identify and present claims of reversible error and, presumably, should not have to allege as error his or her own ineffectiveness. In Johnson's appeal, his appellate counsel was not his attorney at trial.

■ We have concluded that the plain error claim presented by Johnson raises an issue about the effectiveness of his trial counsel. While this Court can decide the plain error claim on this direct appeal, that resolution may affect the merits of a subsequent Rule 61 motion alleging ineffective assistance of trial counsel.[7] In the interests of justice and judicial economy, we have decided to defer ruling on the plain error issue.

We cannot adequately address the ineffective assistance of counsel issue raised by Johnson in this direct appeal, on a limited record, pursuant to the limited plain error standard of appellate review. In fairness to both Johnson and his trial attorney, that matter should be determined after the development of a complete

5. Del.Supr., Ct.R. 8; D.R.E. 103(d); *McDade v. State*, Del.Supr., 693 A.2d 1062, 1064 (1997); *Chance v. State*, Del.Supr., 685 A.2d 351, 354 (1996).

6. *Duross v. State*, Del.Supr., 494 A.2d 1265 (1985). *See Lewis v. State*, Del.Supr., 757 A.2d 709 (2000).

7. *Skinner v. State*, Del.Supr., 607 A.2d 1170, 1172 (1992) ("Although this Court has not previously addressed Skinner's ineffectiveness of counsel claim, *per se,* our disposition of Skinner's challenge to the absence of a specific jury instruction on the issue of 'restraint' in his direct appeal was, in fact, a substantive resolution of Skinner's present ineffectiveness of counsel claim.").

record on that claim.[8] Accordingly, in our discretion in this unusual case, we have determined *sua sponte* that the matter should be remanded for the purpose of considering the ineffective assistance of counsel issue. When the record on that issue has been developed and the trial judge has ruled thereon, it will be ripe for our consideration.

### Conclusion

This matter will be remanded to the Superior Court for a hearing on the issue of whether Johnson received the effective assistance of trial counsel in *all* respects. The Superior Court should then make findings of fact and conclusions of law and submit the same to this Court within 60 days of this opinion. Jurisdiction is retained.[9]

8. *See Duross v. State,* 494 A.2d at 1269. ("In the interest of fairness to both the defendant and his trial attorney, this Court cannot adequately consider a claim of ineffective assistance of counsel in the absence of a complete record concerning trial counsel's investigation and preparation for trial."); *see also id.* at 1267. ("[W]ere a reviewing Court to consider the question [of ineffective assistance of counsel] without an evidentiary hearing, trial counsel would have neither an opportunity to be heard, nor the chance to defend himself against such charge of incompetency.").

9. Supr.Ct.R. 19(c).