**Edward N. JOHNSON, Petitioner,**

v.

**Thomas L. CARROLL, Warden, Respondent.**

**No. CIV.A. 02–1563–JJF.**

United States District Court, D. Delaware.

July 23, 2004.

Matthew M. Robinson, Esq., Robinson & Brandt, P.S.C., Cincinnati, Ohio. for Petitioner.

Thomas E. Brown, Deputy Attorney General, Delaware Department of Justice, Wilmington, for Respondent.

## *MEMORANDUM OPINION*

FARNAN, District Judge.

### I. INTRODUCTION

Petitioner Edward N. Johnson is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the Court is Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I.1.) For the reasons that follow, the Court will deny his petition. (D.I.1.)

### II. FACTUAL AND PROCEDURAL BACKGROUND

#### A. FACTS

At approximately 9:00 p.m. on December 2, 1997, officers from the City of Dover Police Department were dispatched to an apartment in response to an "assault in progress" complaint made by an anonymous female 911 caller. Upon entering the premises, a second floor apartment, the officers discovered Johnson ["Petitioner"] lying on the living room/kitchen floor. Petitioner had been shot in th thigh. His legs were bound together with duct tape. It was later determined that the beating had also fractured Petitioner's right femur. When the officers arrived at the apart-

ment, Johnson told them that a person named Chris had shot him.

In the apartment, the police officers also discovered a small female child, later to be determined to be 18–months old, positioned on the floor next to Petitioner. On the same floor, the police discovered a .25 caliber shell casing, a clean diaper, a roll of duct tape, and a box of sandwich type bags. Another box, containing several .25 caliber rounds, was found on the kitchen counter. The police found the female tenant sitting in her bedroom. The woman's lethargic presence made the officers believe that she was under the influence of some drug.

The paramedics took both Petitioner and the child to the Kent General Hospital. The police assumed the child was Petitioner's daughter. Once at Kent General, a nurse cared for the child, while other medical staff in the emergency room attended to Petitioner's wounds. Because the child's diaper felt heavy, the nurse proceeded to change the child's diaper in an adjacent room.

When the nurse opened the diaper, she discovered two bags containing a total of 136 grams of cocaine inside the diaper. There were also several paper towels which were placed between the cocaine and the child's crotch. Although the paper towels appeared soiled, the diaper was dry.

Without telling Petitioner that cocaine had been discovered in the child's diaper, a detective questioned Petitioner in the emergency room. Petitioner told the detective that he was from New Jersey. According to Petitioner, he and the child were going to Maryland in a rental car to visit a person named Charles Riley. Johnson said he did not know the name of the town in Maryland where Riley lived. While driving to Maryland, Petitioner stated that he was paged by Chris, who asked him to come to the Dover apartment.

After arriving at the Dover address, Petitioner approached the apartment. He was immediately accosted by two males, one of whom had a gun. The assailants forced Petitioner upstairs into an apartment. One of the assailants took the child from him. Petitioner was beaten and bound with duct tape, before being shot in the leg by Chris. Petitioner told the police that Chris and he had "a beef" earlier in their relationship, but did not know why Chris and the others attacked him.

When the detective confronted Petitioner about the cocaine found inside the diaper, Petitioner denied any knowledge. He surmised that Chris must have planted it to set him up. The police suspected that "Chris" was Chris Burroughs, who was known to them as a drug dealer in Dover, and frequented the Dover apartment where they found Petitioner. After presenting him with a photo line-up, Petitioner identified Burroughs as the person who shot him.

Upon searching Petitioner's clothing at the hospital, the police found keys for an Avis rental car. These keys listed the tag number for an automobile. Other Dover Police officers locked the rental car parked approximately 150 feet from the Dover apartment where Petitioner had been found. The police suspected that someone had rummaged through the car, which was unlocked when they found it.

After obtaining a search warrant, the Dover Police conducted a thorough search of the car. No contraband or drug paraphernalia was found in the car. The police did, however, seize: correspondence addressed to Petitioner at a Poughkeepsie, New York address; and Avis rental agreement issued to a "Lincoln Grant" that same day at 3:35 in Mount Vernon, New York; and a backpack containing the same type of diapers worn by the infant child who was with Petitioner.

Without any objection from Petitioner's defense attorney at trial, the State called Detective William L. Kent to testify as an expert witness regarding the sale of illegal drugs. Detective Kent told the jury that Petitioner fit the profile of a drug courier because: Mount Vernon, New York, where the car was rented, is only 10–15 miles north of the Bronx; that New York City is a major "source city" for cocaine sold in Dover; and that illegal drug dealers often have couriers transport the contraband in rental cars. In its closing argument to the jury, the State theorized that the drugs must have belonged to Petitioner, in part, because he is from New York City, the source city for cocaine, and because he had a rental car, a "red flag" indicator for a drug courier.

Petitioner did not testify at trial. His defense attorney argued that no one saw Petitioner place two plastic bags of crack cocaine in the 18–month old child's diaper. The defense attorney also argued that any contraband found in the diaper was probably put there by Petitioner's attackers, in order to get him in trouble with the police.

The jury found Petitioner guilty of Trafficking Cocaine, Possession with Intent to Deliver Cocaine, and Endangering the Welfare of a child. Petitioner's sentences included a minimum mandatory term of 30 years' imprisonment. *Johnson v. State*, 765 A.2d 926, 927–29 (Del.2000).

## B. PROCEDURAL HISTORY

Petitioner appealed his conviction and sentence, alleging that it was plain error for the State to introduce drug courier profile evidence during its case-in-chief as expert police testimony. *Id.* The Delaware Supreme Court concluded that trial counsel's failure to object to this evidence raised an issue about the effectiveness of Petitioner's trial counsel, and remanded the ineffectiveness issue to the Superior

Court for a hearing. *Id.* at 929. The Delaware Supreme Court also deferred ruling on the admissibility of the drug courier profile evidence until the Superior Court reviewed the ineffective assistance of counsel issue. *Id.*

On remand, the Superior Court held that defense counsel was not ineffective for failing to object to the drug courier profile evidence. *Johnson v. State*, ID No. 9712001659, No. 46,1999, Rep. on Remand (Del.Super.Ct. Feb. 20, 2001). Petitioner appealed this decision. On appeal, the Delaware Supreme Court reviewed both issues regarding the drug courier profile evidence and the ineffective assistance of counsel issue.

The Delaware Supreme Court affirmed both of the Superior Court's judgments. *Johnson*, 813 A.2d at 168. With respect to the admissibility of the drug courier profile evidence, the Delaware Supreme Court concluded that the Superior Court's failure to exclude the drug courier profile evidence *sua sponte*, absent any contemporaneous defense objection, was not plain error. *Id.* at 166. However, the court held that, as a matter of first impression, drug courier profile evidence may not be admitted during a criminal trial as substantive evidence of guilt. *Id.* at 165–66. The Delaware Supreme Court also concluded that the Superior Court's rejection of Petitioner's ineffective assistance of counsel claim was supported by the record. *Johnson*, 813 A.2d at 168.

Petitioner's habeas petition asserts two claims: (1) the introduction of drug courier profile evidence at Petitioner's trial violated his constitutional due process rights and his right to a fair trial; and (2) trial counsel provided ineffective assistance by failing to object to the admission of drug courier profile evidence at trial. (D.I. 1 at 9.)

Respondent contends that federal habeas review of the due process/fair trial claim is procedurally barred by an independent and adequate state procedural rule. (D.I. 15 at 4–6.) Respondent also contends that the state supreme court's rejection of Petitioner's ineffective assistance of counsel claim was not contrary to, nor an unreasonable application of, *Strickland,* thereby precluding federal habeas relief under 28 U.S.C. § 2254(d)(1). (D.I. 15 at 13.)

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

■ Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences ... and to further the principles of comity, finality, and federalism." *Woodford v. Garceau,* 538 U.S. 202, 206, 123 S.Ct. 1398, 155 L.Ed.2d 363 (2003) (internal citations and quotation marks omitted). The AEDPA increases the deference federal courts must give to state court decisions, primarily by imposing procedural requirements and standards for analyzing the merits of a habeas petition. *See Woodford,* 538 U.S. at 206, 123 S.Ct. 1398. Generally, the AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).

### B. Exhaustion and Procedural Default

Under the AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842–44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). The AEDPA states:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

■ A petitioner "shall not be deemed to have exhausted remedies available ... if he has the right under the law of the state to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). The exhaustion requirement is based on principles of comity, requiring the petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan,* 526 U.S. at 844–45, 119 S.Ct. 1728; *Werts v. Vaughn,* 228 F.3d 178, 192 (3d Cir.2000). Generally, the petitioner must demonstrate that the habeas claim was "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir. 1997) (citations omitted); *Coverdale v. Snyder,* 2000 WL 1897290, at *2 (D.Del. Dec.22, 2000).

 To satisfy the fair presentation requirement, the petitioner must have asserted a legal theory and facts to the state courts that are substantially equivalent to those contained in the federal habeas petition. *Coverdale*, 2000 WL 1897290, at *2; *Doctor v. Walters*, 96 F.3d 675, 678 (3d Cir.1996). Fair presentation also requires that the claim be raised in a procedural context in which the state courts can consider it on the merits. *Castille v. Peoples*, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989). However, provided that the petitioner did, in fact, fairly present the federal claim to the state's highest court, the exhaustion requirement is satisfied even if the state court did not actually consider or discuss the federal issue. *See Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir.1984).

 A petitioner's failure to exhaust state remedies will be excused if state procedural rules prevent him from seeking further relief in state courts. *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir.2000); *Wenger v. Frank*, 266 F.3d 218, 223 (3d Cir.2001); *see Teague v. Lane*, 489 U.S. 288, 297–98, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). Although deemed exhausted, such claims are nonetheless procedurally defaulted. *Coleman v. Thompson*, 501 U.S. 722, 749, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Lines*, 208 F.3d at 160. In addition, if a state court refuses to consider a petitioner's claim because he failed to comply with an independent and adequate state procedural rule, his claims are deemed exhausted but procedurally defaulted. *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); *Werts*, 228 F.3d at 192. A federal habeas court cannot review the merits of a procedurally defaulted claim unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claim. *McCand-*

*less v. Vaughn*, 172 F.3d 255, 260 (3d Cir.1999); *Coleman*, 501 U.S. at 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1999); *Caswell v. Ryan*, 953 F.2d 853, 861–62 (3d Cir.1992).

## C. Standard of Review Under AEDPA

 Once a federal court determines that a claim is exhausted and not procedurally defaulted, it must next determine the appropriate standard for reviewing the habeas claim. If a state court adjudicated the federal habeas claim on the merits, then the federal habeas court can only grant habeas relief when the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir.2001). A claim was adjudicated on the merits for the purposes of 28 U.S.C. § 2254(d)(1) only if it "is clear from the face of the state court decision that the merits of the petitioner's constitutional claims were examined in light of federal law as established by the Supreme Court of the United States." *Everett v. Beard*, 290 F.3d 500, 508 (3d Cir. 2002).

The AEDPA also requires a federal court to presume that a state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El*, 537 U.S. at 341,

123 S.Ct. 1029 (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000).

## IV. DISCUSSION

### A. Petitioner's claim that the introduction of drug courier profile evidence violated his constitutional due process rights and his right to a fair trial is procedurally barred from federal habeas review.

■ Petitioner's first habeas claim asserts that the introduction of drug courier profile evidence at his trial violated his due process rights and his right to a fair trial. Petitioner raised this issue in his direct appeal by arguing that "it was plain error for the State, during its case-in-chief, to introduce drug courier profile evidence through the testimony of a police officer who was appearing as an expert witness" because it contaminated the integrity and fairness of the trial. *Johnson,* 813 A.2d at 162; D.I. 20, Appellant's Op. Br. at 14. Respondent correctly acknowledges that Petitioner exhausted this claim by presenting it to the Delaware Supreme Court on direct appeal.

Defense counsel did not object to the admission of the drug courier profile testimony during Petitioner's trial. Thus, on appeal, the Delaware Supreme Court only reviewed this claim for plain error pursuant to Rule 8 of the Delaware Supreme Court Criminal Rules. *Johnson,* 813 A.2d at 164–66 & n. 5.[1]

This Court has consistently held that Supreme Court Rule 8 is an independent and adequate state procedural rule which precludes federal habeas review. *See, e.g., Lawrie v. Snyder,* 9 F.Supp.2d 428, 452–53 (D.Del.1998); *Dawson v. Snyder,* 988 F.Supp. 783, 825 (D.Del.1997). As such, the Court cannot review this claim unless Petitioner establishes cause for his procedural default and prejudice resulting therefrom, or that a miscarriage of justice will result if the Court refuses to hear his claim. *See Coleman v. Thompson,* 501 U.S. 722, 750–51, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris,* 489 U.S. at 262, 109 S.Ct. 1038; *Caswell v. Ryan,* 953 F.2d 853, 860–61 (3d Cir.1992).

■ To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). Here, Petitioner appears to assert his trial counsel's ineffective assistance as cause for his procedural default. It is well-settled that an attorney's alleged ineffective assistance can only constitute cause for a procedural default if the ineffectiveness "rise[s] to the level of a Sixth Amendment violation." *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002)(citing *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986). As explained below, the Court concludes that Petitioner's trial counsel did not provide ineffective assis-

---

1. In its review of this issue, the Delaware Supreme Court discussed the uncertainty of the law regarding the admission of drug courier profile evidence as substantive evidence of guilt. The court then concluded that drug courier evidence "may not be admitted during a criminal trial as substantive evidence of guilt." *Johnson,* 813 A.2d at 166. Nonetheless, the court held that Petitioner did not demonstrate plain error in this situation, holding that: "[i]f neither the United States Supreme Court nor this Court has definitively ruled on the issue ... and the federal courts that have addressed the issue are divided, we conclude that the Superior Court's failure to exclude such evidence *sua sponte,* in the absence of any contemporaneous defense objection, did not constitute plain error." *Id.*

tance. Consequently, Petitioner has failed to establish cause sufficient to excuse his procedural default. Because Petitioner has not demonstrated cause, the Court does not need to address the issue of prejudice. *See Coleman,* 501 U.S. at 752, 111 S.Ct. 2546; *Smith v. Murray,* 477 U.S. 527, 533, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Moreover, the Court concludes that Petitioner has failed to demonstrate that a miscarriage of justice will result if the Court does not consider Petitioner's claim. The miscarriage of justice exception applies only in extraordinary cases. *Murray,* 477 U.S. at 496, 106 S.Ct. 2639, 91 L.Ed.2d 397. To establish a miscarriage of justice, a petitioner must show that a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Id.* Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). A petitioner establishes actual innocence by proving that no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522–24 (3d Cir. 2002).

Here, Petitioner has not alleged that he is actually innocent, nor has he presented any colorable evidence of his actual innocence. Thus, he has not demonstrated that a fundamental miscarriage of justice will result from failure to review this claim. As a result, federal habeas review of Petitioner's due process and fair trial claim is unavailable.

B. The state courts' denial of Petitioner's ineffective assistance of counsel claim was not contrary to, or an unreasonable application of, *Strickland v. Washington.*

Both the Superior Court and the Delaware Supreme Court rejected Petitioner's ineffective assistance of counsel claim on the merits. *See Johnson,* 813 A.2d at 167–

68. As such, this Court must determine whether the state courts' decision either was contrary to, or involved an unreasonable application of, clearly established Federal law. *See* 28 U.S.C. § 2254(d)(1); *Williams,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389; *Werts v. Vaughn,* 228 F.3d 178 (3d Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001)(holding that the Third Circuit's interpretation of § 2254(d)(1) in *Matteo v. Superintendent, SCI Albion,* 171 F.3d 877, 880 (3d Cir.1999) (en banc), is in accord with *Williams* ).

The "clearly established Federal law" which governs ineffective assistance of counsel claims is the standard enunciated by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny. *See Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 2535, 156 L.Ed.2d 471 (2003). To prevail on a claim of ineffective assistance of counsel, the petitioner must demonstrate both that: 1) counsel's performance fell below an objective standard of reasonableness; and 2) counsel's deficient performance actually prejudiced the petitioner's case; in other words, there is a reasonable probability that, but for counsel's faulty performance, the outcome of the proceedings would have been different. *Strickland,* 466 U.S. at 687–88, 692–94, 104 S.Ct. 2052; *Marshall v. Hendricks,* 307 F.3d 36, 85 (3d Cir.2002).

Here, the Delaware state courts expressly analyzed the merits of Petitioner's ineffective assistance of counsel in light of the two-pronged *Strickland* test. As such, the Court concludes that the state courts' denial of Petitioner's ineffectiveness claim is not "contrary to" *Strickland. Williams,* 529 U.S. at 406, 120 S.Ct. 1495 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

■ The Court must also determine whether the state courts' rejection of Petitioner's ineffectiveness claim constitutes an "unreasonable application of" *Strickland.* *See* 28 U.S.C. 2254(d)(1). Under this prong, the Court must objectively evaluate the state court decision on the merits, and determine whether the state courts reasonably applied the *Strickland* standard to the facts of Petitioner's case. *See Williams,* 529 U.S. at 412–13, 120 S.Ct. 1495; *Matteo,* 171 F.3d at 891.

After a review of the record, the Court concludes that the state courts reasonably applied the *Strickland* standard. To satisfy the first prong of the *Strickland* test, a petitioner must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052. Here, Petitioner asserts that defense counsel was ineffective for failing to object to the following portion of Detective Kent's testimony as inadmissible "drug courier profile evidence":

> [The] source of supply areas for the City of Dover are New York City . . . our major source of supply area, and we have Philadelphia, and Washington, D.C., and there are some other areas, but those are our major source areas . . . There [are] various methods that [are] brought here . . . People will travel by vehicle to the supply cities. Once they get there they will purchase the drugs. Sometimes they will send what they call a courier, street slang for a runner. They would send them back on a bus or train with the drugs while the actual purchaser or owner of the drugs will come back separately to avoid detection by police. They will obtain rental cars, travel up and back in a rental car, and travel up by train and come back by rental car. There [are] several different methods . . . By their own admission, rental cars are used to avoid us as police

officers seizing their personal assets, their vehicles. Rental car[s] belong to a third party, which is a rental agency, and we can't very well take their property.

(D.I. 1, Ex. B at 70–71.)

■ In evaluating an attorney's performance, a court must be highly deferential to counsel's reasonable strategic decisions. *Id.* at 689, 104 S.Ct. 2052. For example, in *Strickland* the Supreme Court noted:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 688–89, 104 S.Ct. 2052 (quoting *Michel v. Louisiana,* 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).

At the hearing on remand, trial counsel testified that she "analyzed the case as a constructive possession case in which the defense should be an argument that the cocaine was not in the defendant's possession to persuade the jury that there was reasonable doubt as to [Petitioner's] guilt." *Johnson v. State,* ID. No. 9712001659, No. 46, 1999, at ¶ 8 (Del.Super.Ct. Feb. 20, 2001)(unpublished opinion). She did not object to Detective Kent's testimony about New York City and rental cars because she viewed it as "admissible evidence of the *modus operandi* type common in drug trials," and she did not view it as powerful evidence for the State. *Id.* at ¶ 12.

As an initial matter, if trial counsel's interpretation of the challenged testimony as admissible *modus operandi* evidence was reasonable, then her failure to object to such testimony cannot constitute deficient performance. A drug courier profile is a "somewhat informal compilation of characteristics believed to be typical of persons unlawfully carrying narcotics." *Reid v. Georgia*, 448 U.S. 438, 440, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980). The term *modus operandi* refers to "a particular common method of committing a crime." Christopher Bello, Annotation, *Admissibility of expert testimony as to modus operandi of crime—modern cases*, 31 A.L.R.4th 798, 802–03. In 1998 (and at present), the Third Circuit permitted the admission of drug courier profile evidence to establish *modus operandi* in complex cases and when the *modus operandi* evidence involved information not within the common knowledge of the average juror. *See United States v. Davis*, 233 F.Supp.2d 695, 701 (E.D.Pa.2002); *see also United States v. McGlory*, 968 F.2d 309, 345 (3d Cir.1992)("In cases involving narcotics trafficking, courts have admitted a broad range of expert testimony concerning the 'modus operandi' of the drug trade"); *United States v. Webb*, 115 F.3d 711, 715 (9th Cir.1997).

▆ In the present case, Detective Kent testified that three major cities were the source cities for narcotics in Dover, and that drug dealers used three methods of transporting such narcotics: bus, train, or rental cars. Detective Kent did not offer an opinion as to whether Petitioner was guilty of being a drug courier. Moreover, he did not offer this evidence in the "typical" drug courier profile context because it was not offered to prove a component of probable cause for a search and seizure; rather, it was offered as background evidence in conjunction with testimony regarding the weight and cost of such narcotics. Indeed, when the State informed trial counsel that it would use expert testimony, it stated that the testimony would include information that "it is a common practice for drug dealers to transport illegal drugs to Delaware from New York and other locations in rented vehicles." *State v. Johnson*, ID No. 9712001659, at ¶ 9.

None of this information was within the common knowledge of the typical juror. As in many cases where drug courier profile testimony has been admitted to establish drug trade *modus operandi*, Detective Kent's testimony merely provided a context for the jury to consider in evaluating proposed explanations for Petitioner's behavior. *See U.S. v. Lui*, 941 F.2d 844, 847 (9th Cir.1991); *U.S. v. Doe*, 149 F.3d 634 (7th Cir.1998); *U.S. v. Salguiero–Duarte*, 12 F.3d 1110 (9th Cir.1993)(unpublished opinion); *U.S. v. White*, 890 F.2d 1012 (8th Cir.1989). The Court thus concludes that trial counsel reasonably could have interpreted the testimony to be admissible drug trade *modus operandi* testimony. As such, trial counsel's failure to object to this testimony was not deficient performance.[2]

Further, even if trial counsel should have interpreted the testimony as consti-

**2.** In reaching this conclusion, the Court is aware that, during the hearing on remand, two experienced defense attorneys testified that they would have objected to the challenged testimony on the ground that it was not *modus operandi* evidence. *Johnson v. State*, ID No. 9712001659, No.46, 1999, Rep. on Remand, at 9–10. However, as noted in *Strickland*, "[t]here are countless ways to pro-

vide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Thus, even though the Court respects the attorneys' opinions, the Court concludes that their interpretation of the issue does not render trial counsel's interpretation of the testimony unreasonable.

tuting drug courier profile evidence that was admitted to prove Petitioner's guilt, and not as drug courier evidence to prove *modus operandi*, trial counsel's failure to object to the testimony was not objectively unreasonable. Pursuant to *Strickland*, a court must assess an attorney's performance under the circumstances existing at the time of counsel's conduct. *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. When Petitioner went to trial in December 1998, there was a split of authority in the six federal Circuits that had addressed the issue of whether drug courier profile evidence could be admitted as substantive evidence of guilt.[3] Although the Delaware courts had not yet addressed the issue, Delaware precedent did permit drug courier profile evidence to be considered as a component of probable cause for a search or seizure by law enforcement officers. *See Quarles v. State*, 696 A.2d 1334, 1338 (Del.1997); *Johnson*, 813 A.2d at 165–66. Given the unsettled nature of this issue at the time of Petitioner's trial, the Court concludes that trial counsel's failure to object to the drug courier profile testimony was not deficient performance.[4] *See, e.g., Givens v. Cockrell*, 265 F.3d 306, 309–10 (5th Cir.2001)(defense counsel's failure to object to admission of defendant's prior unadjudicated offenses was not deficient performance); *Smith v. Singletary*, 170 F.3d 1051, 1054 (11th Cir.1999)("the rule that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized"); *U.S. v. De La Pava*, 268 F.3d 157, 166 (2d Cir.2001); *U.S. v. Ternes*, 16 F.3d 418 (10th Cir.1993).

In short, given the fact that it was reasonable for trial counsel to interpret the testimony as admissible drug trade *modus operandi* evidence, and given the unsettled nature of the law regarding admissibility of such evidence to establish substantive guilt at the time of Petitioner's trial, the Court concludes that trial counsel's performance was not deficient.[5]

3. The Seventh Circuit approved the admission of such evidence, while the other circuits did not. The Third Circuit had not ruled on the issue. *See Johnson*, 813 A.2d at 166 n. 11.

4. In his traverse, Petitioner's counsel contends that Petitioner's trial counsel should have objected to the drug courier profile evidence because there was a trend in making such objections. However, the two cases Petitioner cites in support of this argument are inapposite. First, *Reid v. Georgia*, 448 U.S. 438, 100 S.Ct. 2752, 65 L.Ed.2d 890 (1980), involved the use of drug courier profile evidence as a component of probable cause for a police search and seizure. The Supreme Court held that the facts of the case did not support a finding that the police officer had probable cause to search and seize the defendants. However, the Court noted that there were circumstances where certain information might provide a sufficient component of probable cause. Second, the court in *United States v. Lim*, 984 F.2d 331, 335 (9th Cir. 1993) held that drug courier profile testimony "may be admissible in exceptional, complex cases, to establish *modus operandi*." The *Lim*

holding actually supports the Court's conclusion that trial counsel may have reasonably interpreted the challenged testimony to be admissible drug trade *modus operandi* evidence. The facts of the present case were complex enough to justify the use of drug courier profile evidence to establish drug trade *modus operandi*.

5. The Court also rejects Petitioner's corollary argument that trial counsel was ineffective for failing to object to the prosecutor's use of Detective Kent's testimony in his closing argument. "The relevant question is whether the prosecutor's comments so infected the trial with unfairness to make the conviction a denial of due process." *Lesko v. Lehman*, 925 F.2d 1527, 1546 (3d Cir.1991)(quoting *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986)). Keeping in mind the unsettled nature of the law with respect to such evidence, and viewing the isolated statements contained in the closing argument with respect to all of the evidence and facts presented at trial, the comments were not sufficiently prejudicial to constitute a denial of due process. *See Mandelaka v.*

Moreover, Petitioner has not demonstrated the requisite prejudice to satisfy the second prong of the *Strickland* test because he has failed to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 692–94, 104 S.Ct. 2052. Even if the testimony was improper drug courier profile evidence, the record reveals that trial counsel sufficiently rebutted the testimony on cross-examination. First, trial counsel emphasized that Petitioner was from Poughkeepsie, which was not one of the three named source cities. Second, trial counsel emphasized that: 1) Petitioner was not listed on the rental agreement; 2) the police never attempted to find the individual listed on the rental agreement; 3) no drugs were found in the car; and 4) the police never tested for fingerprints. Finally, counsel emphasized that Petitioner did not own a car, thus, the use of a rental car could not have been an effort to avoid seizure of his own car. It appears that trial counsel's rebuttal sufficiently countered the import of the challenged testimony.

Moreover, reviewing Petitioner's explanation in light of the evidence adduced at trial leads the Court to conclude that a reasonable juror could have found that Petitioner constructively possessed the cocaine, even without considering the challenged drug courier profile evidence. The following evidence was established at trial: (1) Petitioner admitted to traveling with the baby in the rental car; (2) Petitioner possessed a key to the rental car; (3) two letters addressed to Petitioner were found in the rental car; (4) a back-pack with additional diapers and other baby items was found in the rental car; (5) one clean diaper was found lying next to Petitioner on the floor; (6) Petitioner identified Chris Burroughs, a known drug dealer, as his attacker; (7) the apartment where Petitioner was found was known to be frequented by Chris Burroughs; (8) Petitioner was alone in the room with the baby when the police arrived; (9) 136 grams of cocaine, packaged in plastic bags, were found in the baby's diaper, and there was a paper towel between the cocaine and the baby; and (10) the cocaine was worth $27,000.

The facts recited above are in stark contrast to Petitioner's version of what occurred. Initially, at the hospital, Petitioner told police that the baby was his daughter. Yet, later on, he redacted this statement, saying that "she was like a daughter to him." Indeed, his true relationship with the baby was never revealed.

Next, Petitioner first told police that he was traveling from New Jersey to Maryland to visit a person named Charles Riley. Yet, Petitioner did not know the name of the town where Riley lived, and the rental agreement found in Petitioner's rental car revealed that the car was rented in Mount Vernon, New York, not in New Jersey.

Finally, Petitioner claimed that he went to the apartment because a person named "Chris," paged him and told Petitioner to meet him at the apartment. Upon his arrival, Petitioner alleges Chris and other unknown attackers stole his wallet, taped him, broke his leg, shot him, and then hid

---

*Snyder*, 1998 WL 299360, at *10 (D.Del. May 22, 1998). Further, "[b]ecause many lawyers refrain from objecting during opening statement and closing argument, absent egregious misstatements by the prosecutor, the failure to object during closing argument and opening statement is within the 'wide range' of permissible professional legal conduct, and thus does not constitute ineffective assistance of counsel." *U.S. v. Lively*, 817 F.Supp. 453, 466 (D.Del.), *aff'd*, 14 F.3d 50 (3d Cir.1993). Having determined the reasonableness of trial counsel's interpretation of the testimony as admissible *modus operandi* testimony, her failure to object to the prosecutor's use of such testimony was also reasonable.

$27,000 worth of cocaine in the baby's diaper to get him in trouble with the police. Petitioner offered no reason why Chris and the others wanted to get him in trouble with police.

After considering all the record evidence, the Court concludes that the drug courier profile testimony was a limited portion of the State's case-in-chief evidence. Even if the drug courier profile evidence had been objected to and excluded, the Court concludes the jury could reasonably have found that Petitioner constructively possessed the cocaine. Therefore, Petitioner has failed to demonstrate how trial counsel's failure to object to the drug courier testimony prejudiced the outcome of his trial.[6]

In conclusion, the Court concludes that the denial of Petitioner's ineffective assistance claim by the state courts was neither contrary to, nor an unreasonable application of, *Strickland,* and therefore federal habeas relief is not available on this ground. The Court will deny Petitioner's ineffective assistance of counsel claim.

## IV. CERTIFICATE OF APPEALABILITY

■ Finally, the Court must decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong."

---

**6.** The Court also rejects Petitioner's assertion that the prejudice prong is satisfied because his appeal would have been different if not for trial counsel's failure to preserve the issue by objecting to the testimony at trial. The Court

*Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

■ For the reasons stated above, the Court concludes that Petitioner is not entitled to federal habeas relief for his ineffective assistance of counsel claim. The Court also concludes that Petitioner's due process/fair trial claim is procedurally barred from federal habeas review because of an independent and adequate state procedural rule. Despite these conclusions, it may be that reasonable jurists would find the Court's conclusion regarding the ineffective assistance of counsel claim to be unreasonable. For example, as were the two experienced defense attorneys who testified for Petitioner, I am troubled by the failure of trial counsel to object to Detective Kent's "courier profile" testimony in the circumstances of this case. For this reason, I find Petitioner has made a substantial showing of the denial of a constitutional right, and a certificate of appealability will issue on this claim.

## V. CONCLUSION

For the foregoing reasons, Petitioner's request for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate Order will be entered.

### ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY ORDERED that:

1. Petitioner Edward N. Johnson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.1.) is DENIED.

2. A certificate of appealability will issue with respect to Petitioner's claim that

---

has concluded that trial counsel was not ineffective. As such, this argument has no merit. *See U.S. v. Mannino,* 212 F.3d 835, 845 (3d Cir.2000); *Gov't of Virgin Islands v. Forte,* 865 F.2d 59, 64 (3d Cir.1989).

defense counsel provided ineffective assistance by failing to object to the police detective's "drug courier profile" testimony.