

2005 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-19-2005

# Johnson v. Carroll

Precedential or Non-Precedential: Non-Precedential

Docket No. 04-3428

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2005

Recommended Citation

"Johnson v. Carroll" (2005). *2005 Decisions.* Paper 384.
http://digitalcommons.law.villanova.edu/thirdcircuit_2005/384

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2005 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No: 04-3428

EDWARD N. JOHNSON,

Appellant

v.

THOMAS L. CARROLL, Warden;
THE ATTORNEY GENERAL OF THE
STATE OF DELAWARE

On Appeal from the United States District Court
for the District of Delaware, Pursuant to a Certificate of Appealability
Granted by the District Court
(Case No. 02-1563-JJF)
District Judge: Hon. Joseph J. Farnan

Submitted Under Third Circuit LAR 34.1(a)
September 16, 2005

Before: ROTH, McKEE, FISHER, Circuit Judges

(Filed: October 19, 2005)


OPINION

McKEE, Circuit Judge.

Edward Johnson challenges the district court's denial of his petition for a writ of

habeas corpus. The district court granted Johnson permission to appeal his claim under

*Strickland v. Washington*, 466 U.S. 668 (1984). Johnson maintained that his Sixth

1

Amendment right to counsel had been denied by trial counsel's failure to object to evidence suggested that he fit the profile of a drug courier. For the reasons that follow, we will affirm the district court's denial of the writ.

## I. Facts & Procedural History.[1]

> At approximately 9:00 p.m. on December 2, 1997, officers from the City of Dover Police Department were dispatched to an apartment in response to an "assault in progress" complaint made by an anonymous female 911 caller. Upon entering the premises, a second floor apartment, the officers discovered Johnson lying on the living room/kitchen floor. Johnson had been shot in the thigh. His legs were bound together with duct tape. It was later determined that the beating had also fractured Johnson's right femur. When the officers arrived at the apartment, Johnson told them that a person named Chris had shot him.

> In the apartment, the police officers also discovered a small female child, later determined to be 18-months old, positioned on the floor next to Johnson. On the same floor, the police discovered a .25 caliber shell casing, a clean diaper, a roll of duct tape, and a box of sandwich type bags. Another box, containing several .25 caliber rounds, was found on the kitchen counter. The police found Cheryl Harris, the tenant, sitting in her bedroom. Harris's lethargic presence made the officers believe that she was under the influence of some drug.

> The paramedics took both Johnson and the child to the Kent General Hospital. . . . Because the child's diaper felt heavy, the nurse proceeded to change the child's diaper in an adjacent room.

---

[1] Because the factual background for Johnson's claim of error is important to a proper resolution of his appeal we take the liberty of quoting the state court's summary of the facts in some detail.

When the nurse opened the diaper, she discovered two bags containing a total of 136 grams of cocaine inside the diaper. There were also several paper towels which were placed between the cocaine and the child's crotch. Although the paper towels appeared soiled, the diaper was dry.

Without telling Johnson that cocaine had been discovered in the child's diaper, a detective questioned Johnson in the emergency room. Johnson told the detective that he was from New Jersey. According to Johnson, he and the child were going to Maryland in a rental car to visit a person named Charles Riley. Johnson said he did not know the name of the town in Maryland where Riley lived. While driving to Maryland, Johnson stated that he was paged by Chris, who asked Johnson to come to Dover apartment.

After arriving at the Dover address, Johnson approached the apartment. He was immediately accosted by two males, one of whom had a gun. The assailants forced Johnson upstairs into an apartment. One of the assailants took the child from him. Johnson was beaten and bound with duct tape, before being shot in the leg by Chris. Johnson told the police that Chris and he had "a beef" earlier in their relationship, but did not know why Chris and the others attacked him.

When the detective confronted Johnson about the cocaine found inside the diaper, Johnson denied any knowledge. He surmised that Chris must have planted it to set him up. The police suspected that "Chris" was Chris Burroughs, who was known to them as a drug dealer in Dover, and frequented the Dover apartment where they found Johnson. After presenting him with a photo line-up, Johnson identified Burroughs as the person who shot him.

Upon searching Johnson's clothing at the hospital, the police found keys for an Avis rental car. These keys listed the tag number for an automobile. Other Dover Police officers located the rental car parked approximately 150 feet from the Dover apartment where Johnson had been found. The police

suspected that someone had rummaged through the car, which was unlocked when they found it.

After obtaining a search warrant, the Dover Police conducted a thorough search of the car. No contraband or drug paraphernalia was found in the car. The police did, however, seize: correspondence, addressed to Johnson at a Poughkeepsie, New York address; an Avis rental agreement, issued to a "Lincoln Grant" that same day at 3:35 p.m. in Mount Vernon, New York; and a backpack containing the same type of diapers worn by the infant child who was with Johnson.

Without any objection from Johnson's defense attorney at trial, the State called Detective William L. Kent to testify as an expert witness regarding the sale of illegal drugs. Detective Kent told the jury that Johnson fit the profile of a drug courier because: Mount Vernon, New York, where the car was rented, is only 10-15 miles north of the Bronx; that New York City is a major "source city" for cocaine sold in Dover; and that illegal drug dealers often have couriers transport the contraband in rental cars. In its closing argument to the jury, the State theorized that the drugs must have belonged to Johnson, in part, because he is from New York City, the source city for cocaine, and because he had a rental car, a "red flag" indicator for a drug courier.

Johnson did not testify at trial. His defense attorney argued that no one saw Johnson place two plastic bags of crack cocaine in the 18-month-old child's diaper. The defense attorney also argued that any contraband found in the diaper was probably put there by Johnson's attackers, in order to get Johnson in trouble with the police.

The jury found Johnson guilty of Trafficking Cocaine, Possession with Intent to Deliver Cocaine, and Endangering the Welfare of a Child. Johnson's sentences included a minimum mandatory term of 30 years' imprisonment.

*Johnson v. State*, 765 A.2d 926, 927-29 (Del. 2000).

Johnson appealed his conviction and sentence, alleging that it was plain error for the State to introduce drug courier profile evidence during its case-in-chief as expert police testimony. The Delaware Supreme Court remanded the case to the Superior Court for a hearing to determine if Johnson's trial counsel was ineffective in failing to object to this evidence. *Id*. at 930.

On remand, the Superior Court held that defense counsel was not ineffective. Johnson appealed, and the Delaware Supreme Court affirmed. *Johnson v. State*, 813 A.2d 161, 162-63, 168 (Del. 2001).

Johnson's federal habeas petition followed. In it, Johnson asserted two claims: (1) the introduction of drug courier profile evidence at his trial violated his constitutional due process rights and his right to a fair trial; and (2) trial counsel provided ineffective assistance by failing to object to the admission of drug courier profile evidence at trial.

The district court denied Johnson habeas relief concluding that Johnson's first claim was procedurally barred from federal habeas review. *Johnson v. Carroll*, 327 F. Supp.2d 386, 400 (D.Del. 2004). That issue is not before us. The district court also concluded that the state courts' denial of Johnson's ineffective assistance of counsel claim was not contrary to, nor an unreasonable application of, *Strickland*. *Id*. However, the district court concluded that Johnson had made a substantial showing of the denial of a constitutional right and issued a certificate of appealability limited to the issue of whether Johnson's counsel was constitutionally ineffective in failing to object to the drug

5

courier profile evidence. *Id.*

This appeal followed.

## II. Discussion.[2]

Johnson argues that his counsel was ineffective when she failed to challenge clearly improper testimony of a drug courier profile that was unfairly prejudicial and led to his conviction. The government contends that Johnson has not demonstrated that the state courts' application of the *Strickland* two-prong test for ineffective assistance of counsel was unreasonable.

Under *Strickland,* in order to merit habeas relief based on a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) his/her attorney's performance was deficient, and (2) he/she was prejudiced by this deficiency. *Strickland,*

---

[2]We apply the same standard of review as the district court, as mandated by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Since Johnson filed his petition after the effective date of AEDPA, the amendments to Title 28 contained in that act govern our review of Johnson's claim.

Under the AEDPA amendments to § 2254 applicable to this appeal:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. . . .

28 U.S.C. § 2254(d)(1).

466 U.S. at 687. To demonstrate deficiency, a petitioner must establish that counsel's performance "fell below an objective standard of reasonableness." *Id*. at 688. To demonstrate prejudice, a petitioner must demonstrate that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Ultimately, the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686.

The district court explained why the state court decision under review was not contrary to, nor an unreasonable application of, the two-part test established in *Strickland*, and we will affirm substantially for the reasons set forth by the district court.

The district court explained:

> [R]eviewing [Johnson's] explanation in light of the evidence adduced at trial leads the court to conclude that a reasonable juror could have found that [Johnson] constructively possessed the cocaine, even without considering the challenged drug courier profile evidence. The following evidence was introduced at trial: (1) Johnson admitted to traveling with the baby in the rental car; (2) Johnson possessed a key to the rental car; (3) two letters addressed to Johnson were found in the rental car: (4) a back-pack with additional diapers and other baby items was found in the rental car; (5) one clean diaper was found lying next to Johnson on the floor; (6) Johnson identified Chris Burroughs, a known drug dealer, as his attacker; (7) the apartment where Johnson was found was known to be frequented by Chris Burroughs; (8) Johnson was alone in the room with the baby when the police arrived; (9) 136 grams of cocaine, packaged in plastic bags, were found in the baby's diaper, and there was a paper towel between the cocaine and the baby; and (1) the

cocaine was worth $27,000.

The facts recited above are in stark contrast to [Johnson's] version of what occurred. Initially, at the hospital, [Johnson] told police that the baby was his daughter. Yet, later on, he redacted this statement, saying that "she was like a daughter to him." Indeed, his true relationship with the baby was never revealed.

Next, [Johnson] first told police that he was traveling from New Jersey to Maryland to visit a person named Charles Riley. Yet, [Johnson] did not know the name of the town where Riley lived, and the rental agreement found in [Johnson's] rental car revealed that the car was rented in Mount Vernon, New York, not in New Jersey.

Finally, [Johnson] claimed that he went to the apartment because a person name "Chris," paged him and told [Johnson] to meet him at the apartment. Upon his arrival, [Johnson] alleges Chris and other unknown attackers stole his wallet, taped him, broke his leg, shot him, and then hid $27,000 worth of cocaine in the baby's diaper to get him in trouble with the police. [Johnson] offered no reason why Chris and the others wanted to get him in trouble with police.[3]

After considering all the record evidence, the Court concludes that the drug courier profile testimony was a limited portion of the State's case-in-chief evidence. Even if the drug courier profile evidence had been objected to and excluded, the Court concludes the jury could reasonably have found that [Johnson] constructively possessed the cocaine. Therefore, [Johnson] has failed to demonstrate how trial counsel's failure to object to the drug courier testimony prejudiced the outcome of his trial.

*Johnson*, 327 F. Supp.2d at 399-400. We agree with the district court's analysis, and will

---

[3]Moreover, we agree with the government that "it is largely self-evident that the attackers would need only have to have deposited one of the two bags [of cocaine], or some lesser amount in the same or a different situs, to inculpate Johnson." Government brief at 23.

affirm substantially for the reasons set forth by the district court.[4]

### III. Conclusion.

For the reasons set forth above, we will affirm the district court's denial of Johnson's habeas petition.

---

[4]Because we conclude that Johnson has not demonstrated that his counsel's failure to object to the drug courier profile evidence prejudiced his case, we need not decide whether Johnson has sufficiently demonstrated that his counsel's performance was deficient under prong one of the *Strickland* test.